IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. SAG-15-0270 |
| DAMON LAMONT BENNETT | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

Damon Lamont Bennett, who is presently in Bureau of Prisons ("BOP") custody at FCI Allenwood Low, has filed a Motion for Compassionate Release ("the Motion"), ECF 46, 52. The Government filed an opposition to the Motion, ECF 48, 50, and Bennett filed a reply, ECF 51. At the Court's request, the Government also submitted Bennett's updated medical records from BOP, ECF 54. For the reasons that follow, Bennett's Motion will be denied.

I.   **Factual and Procedural Background**

In 2014, a federal grand jury indicted Bennett on charges of Hobbs Act robbery and discharging a firearm during and in relation to a crime of violence. At his guilty plea proceeding in 2015, Bennett admitted to the following statement of facts:

> On June 12, 2014, the defendant, Damon Lamont Bennett, with the aid of Ian Brown, committed the armed robbery of an individual who was engaged in the business of attempting to purchase drugs (hereinafter "V1"), which drugs had traveled in interstate commerce for re-sale in Maryland. The defendant knew that V1 had intended to use the $14,000 that day to purchase marijuana which had traveled in interstate commerce, and that V1 intended to profit from the resale of this marijuana. The robbery therefore affected and obstructed interstate commerce.
>
> Specifically, in the weeks prior to June 12, 2014, Ian Brown called V1 and asked if V1 wanted to make some money. V1 said that Brown told him that if he could obtain $14,000 they could purchase five pounds of marijuana. Brown advised that

after they purchased the marijuana, Brown would sell the marijuana and they both would make an additional $3,500 each. V1 agreed to provide the money to fund the purchase the marijuana. The defendant and Brown had devised this plan so that the defendant could rob V1 of the money when V1 arrived at the location of the drug transaction.

On June 12, 2014, V1 met Brown and brought $14,000 in case with him, which he hid inside a Nutter Butter cookie box. During the drive, Brown advised the defendant as to their status. The defendant and Brown planned to rob V1 of the $14,000. The substance of text messages between Brown and Bennett around the time of the robbery show Brown and the defendant communicating to set up the robbery, including about their location and the car driven by V1 ("White Honda SUV"), the amount of money carried by V1 ("he got fourteen"), the location of V1's cash ("Nutter Butter Box"), and the need to wait for bystanders to leave before committing the robbery ("Just waiting on the truck to leave and its someone on the B" [referring to balcony of a nearby apartment]).

Brown directed V1 to the Greentree apartment complex on Crain Highway in Glen Burnie, Maryland. When they arrived in the area, Brown directed V1 to a parking space near 8077 Green Orchard Road. V1 put the $14,000 into his pocket.

V1 left his truck and began to walk toward the apartment building. At that time, the defendant pressed a silver revolver to V1's upper back. The defendant then demanded the money and threatened to kill V1 if he did not give up the money. V1 then pushed the defendant and attempted to run by him, but the defendant grabbed V1 and threw V1 into V1's vehicle, dislocating V1's shoulder.

The defendant then placed the revolver on V1's chest and again demanded he turn over the cash. V1 again refused, and the defendant hit him three times in the back of the head with the revolver. After the third strike to his head, V1 attempted to grab the revolver out of the defendant's hands. The defendant bit V1 three times in the arm in an attempt to keep hold of the revolver – the bites being so hard that flesh was removed from V1's arm. The defendant was then able to free the gun from V1's grasp, push V1 back, and fire one shot at V1. This shot missed. The defendant then grabbed V1, pointed the gun at him and stated, "I am not playing, give me the money or I will kill you." The defendant then took the $14,000 in case and V1's cell phone. The defendant instructed V1 not to follow him "or I will kill you."

Pursuant to the plea agreement, Bennett pled guilty only to Count One of the indictment, and the parties agreed to a sentence of 96 months pursuant to Rule 11(c)(1)(C). Although that agreed sentence exceeded the guideline range that was calculated for Count One, had Bennett been convicted of Count Two as supported by the facts he agreed were true, he would have faced a

guidelines range of 153-161 months, with a mandatory minimum sentence of 120 months. The sentencing judge accepted the parties' jointly proposed disposition, and sentenced Bennett to 96 months of imprisonment on December 18, 2015.

Bennett filed the instant motion on November 24, 2020, seeking to have his sentence reduced and requesting release to home confinement in light of the COVID-19 pandemic.

## II.     Legal Standards

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i) (2018); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239-41 (2018). While previously, any motion for compassionate release had to be initiated by the Bureau of Prisons ("BOP"), the First Step Act granted defendants the ability to move the Court for a reduction in their sentence for "extraordinary and compelling reasons." § 603(b)(1). Before a defendant's motion can be filed with the Court, one of two conditions must be satisfied: (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* Once a motion is for compassionate release is properly filed, the Court follows a three-step inquiry: (1) determining whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release; (2) considering whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction; and (3) ensuring that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

**III. Analysis**

The Government does not contest that Bennett adequately exhausted his administrative remedies and is therefore entitled to file this Motion. In addition, the Government concedes that Bennett's medical conditions present an "extraordinary and compelling reason [ ]" rendering him eligible for consideration for compassionate release.[1] The Government opposes a sentence reduction, however, on the basis of the factors set forth at 18 U.S.C. § 3553(a). This Court agrees that, considering those factors, the requested reduction would be inappropriate.

The factors enumerated in 18 U.S.C. § 3553(a) are:

(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) To afford adequate deterrence to criminal conduct;
(C) To protect the public from further crimes of the defendant; and
(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D).

When applied to the facts of this case, those factors weigh against Bennett's requested reduction. Bennett's criminal conduct, as described above, was uncommonly violent, as the incident involved him striking a victim multiple times in the head with a firearm, biting through the victim's flesh, shooting at the victim in the parking lot of an apartment complex, and then threatening to kill him. Bennett received a federal sentence that already constituted a significant downward variance from the guideline range that would have applied absent his plea agreement – an eight-year sentence instead of a sentence exceeding eleven years. To reduce that sentence to

---

[1] Given the Government's concession, this Court need not delve further into Bennett's medical history or the current pandemic-related conditions at his facility of incarceration. This Court notes, however, that Bennett was diagnosed with the COVID-19 virus in December of this year and appears, from the medical records, to have received adequate care and to have made a full recovery without complications. ECF 54. In fact, the records do not indicate that Bennett has sought or received any medical care since December 12, 2020. *Id.*

less than six years would neither reflect the seriousness of his offense nor afford adequate deterrence to Bennett or to others who might be considering similar violent armed robberies. The original sentence best provides just punishment for the offense and will permit Bennett to further avail himself of the educational and vocational training available in the Bureau of Prisons.

This decision does not intend to minimize the efforts Bennett has made at rehabilitation and self-improvement during his lengthy period of incarceration. He clearly enjoys family support from his fiancée, has maintained a relatively good disciplinary record, and has successfully completed a wide variety of educational and training courses offered by BOP. Nonetheless, for the reasons described above, the reduced sentence he proposes does not comport with the requirements of the sentencing statute.

For the reasons set forth herein, Bennett's Motion for Compassionate Release is DENIED. A separate Order will ISSUE.

DATED: January 7, 2021                        /s/
                                              Stephanie A. Gallagher
                                              United States District Judge